IN THE DISTRICT COURT OF BRYAN COUNTY
STATE OF OKLAHOMA

| | |
|---|---|
| 1. GOLDEN SHOVEL HOLDINGS, LLC, *and*;<br>2. GOLDEN PROP. MGMT., LLC;<br><br>*Plaintiffs*,<br><br>vs.<br><br>1. THE SCOTTS MIRACLE-GRO CO.;<br>2. THE HAWTHORNE COLLECTIVE, INC. *d/b/a* LUXX LIGHTING;<br>3. ROUTE FOUR, LLC *d/b/a* HYDROPONICS, INC.,<br>4. LUXX LIGHTING, INC.;<br>5. HYDROPONICS, INC., *and*;<br>6. HPI DISTRIB. CORP.,<br><br>*Defendants*. | Case No. CJ-2022-69<br><br>FILED<br>BRYAN COUNTY, OKLAHOMA<br>DISTRICT COURT CLERK<br><br>MAY 26 2022<br><br>DONNA ALEXANDER<br>COURT CLERK<br>BY J. M'Ginnis Deputy<br><br>**JURY TRIAL DEMANDED**<br>**ATTORNEY LIEN CLAIMED** |

**PLAINTIFFS' ORIGINAL PETITION**

Plaintiffs Golden Shovel Holdings, LLC ("Golden Shovel") and Golden Property Management, LLC ("GPM") (collectively "Plaintiffs"), for their causes of action against Defendants The Scotts Miracle-Gro Company, The Hawthorne Collective, Inc. *d/b/a* Luxx Lighting, Route Four, LLC *d/b/a* Hydroponics, Inc., Luxx Lighting, Inc., and Hydroponics, Inc., and HPI Distribution Corporation (collectively "Defendants") alleges, and states as follows:

**I.**
**THE PARTIES**

1. Golden Shovel is an Oklahoma corporation with its principal place of business located at 10028 W. Highway 70 in Durant, Oklahoma, 74701.

2. GPM is an Oklahoma corporation with its principal place of business located at 10028 W. Highway 70 in Durant, Oklahoma, 74701.

1

**EXHIBIT 1**

3. The Scotts Miracle-Gro Company ("Scotts") is an Ohio corporation with its principal place of business located at 14111 Scottslawn Road, Marysville, Ohio, 43041.

4. The Hawthorne Collective, Inc. ("Hawthone") d/b/a Luxx Lighting is an Ohio corporation and wholly owned subsidiary of Scotts with its principal place of business located at 14111 Scottslawn Road, Marysville, Ohio, 43041.

5. Luxx Lighting, Inc. ("Luxx") is a California corporation with its principal place of business located at 3827 Wacker Drive, Mira Loma, California 91752.

6. Route Four, LLC ("Route Four") d/b/a Hydroponics, Inc. is a Delaware corporation with its principal place of business located at 3827 Wacker Drive, Mira Loma, California 91752.

7. Hydroponics, Inc. ("Hydroponics") is a California corporation with its principal place of business located at 3827 Wacker Drive, Mira Loma, California 91752.

8. HPI Distribution Corporation ("HPI") is a California corporation with its principal place of business located at 3811 Wacker Drive, Mira Loma, California 91752.

## II.
## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to the Oklahoma Pleading Code, OKLA. STAT. tit. 12, § 2004(F).

10. Pursuant to OKLA. STAT. tit. 12, §§ 137, 142 & 143 and the Oklahoma Uniform Commercial Code, OKLA. STAT. tit. 12A § 2-401, venue is proper in Bryan County.

## III.
## ALLEGATIONS OF FACT

11. On June 26, 2018, the voters of the State of Oklahoma passed State Question 788, subsequently codified at 63 O.S. § 420A et seq., legalizing medical marijuana. See, Cloudi Mornings, LLC. v. City of Broken Arrow, 2019 OK 75, ¶0, 454 P.3d 753, 754 (Court's syllabus).

12. On December 18, 2019, GPM purchased Luxx Double Ended (DE) High Pressure Sodium (HPS) bulbs (known in industry parlance as "lamps") from Hydroponics, Route Four, or HPI for its newly constructed medical marijuana grow facility located at 10028 West State Highway 70 in Durant, Oklahoma (the "facility") for Golden Shovel's use and benefit in cultivating, growing, and producing medical marijuana.

13. Defendants' sale and distribution of the Luxx lamps and lighting systems ("Luxx lamps") to GPM constitutes a sale of goods pursuant to Oklahoma's Uniform Commercial Code, OKLA. STAT. tit. 12A §§ 2-101, *et seq.*

14. Defendants delivered the Luxx lamps to GPM at the facility.

15. The Luxx lamps are metal halide lamps, which are a part of the High Intensity Discharge ("HID") family of lighting products, that includes mercury vapor and sodium lighting.

16. In place of the filament used with incandescent bulbs, the Luxx lamps are equipped with a sealed, quartz glass, "arc tube," which contains gases, mercury, sodium, and other metal salts, connected to electrodes at each end (*i.e.*, double ended).

17. The arc tube and electrode assembly are, in turn, contained within the Luxx lamp's thin outer glass "envelop."

18. HID illumination is generated within the Luxx lamps by a sustained electrical arc, as the electric current passes between the electrodes and through the gas in the arc tube.

19. The Luxx lamp's arc tube operates at high temperature and under high pressure.

20. Upon information and belief, Luxx, Hydroponics, Route Four, or HPI marketed the Luxx lamps as advantageous because of their ability to carefully control the "warmth" or "coolness" of the light emitted by the Luxx lamps by varying the mixture or "dose" of metals and gases inside the arc tube.

21. Upon information and belief, Luxx, Hydoponics, Route Four, or HPI failed to disclose the countervailing disadvantage, which was the known propensity of Luxx lamps to explode, usually at the end of their life, resulting in the forceful ejection of extremely high heated quartz glass or crystal particles from the fixture igniting any combustibles that the quartz or crystal particles come into contact with.

22. After GPM completed construction of the facility, including installation of the Luxx lamps, Golden Shovel commenced operation of its medical marijuana grow on the premises.

23. On June 6, 2020, Golden Shovel's surveillance video from the vegetation room at the facility shows a lamp going out and white smoke drifting aloft numerous plants.

24. A short time later, the video is obscured by black smoke filling the vegetation room.

25. The Luxx lamps exploded discharging hot chards of glass and crystal, which landed on the plastic trays beneath the lamp holding Golden Shovel's marijuana plants.

26. The resulting fire that ensued destroyed Golden Shovel's crop and burned a portion of GPM's new facility.

27. Golden Shovel sustained significant damage to its medical marijuana crop inventory, including developing plants, equipment, and other valuables.

28. At the time, Golden Shovel had only used the Luxx lamps for less than six months, which is nowhere near the end of their life.

29. GPM submitted a claim to its insurance carrier for the resulting damages to its facility.

30. Thereafter, GPM's insurance carrier submitted a subrogation claim to Defendants.

31. Upon information and belief, Defendants settled the separate subrogation claim.

32. However, GPM was not reimbursed for its deductible or other uninsured losses.

33. To date, Defendants have refused GPM's and Golden Shovel's requests for reimbursement of their uninsured damages and losses.

34. Upon information and belief, Luxx owned, managed, controlled, or shared common directors or officials with Hydroponics, HPI, and Route Four, essentially, operating as alter egos.

35. On or about December 31, 2021, Scotts either purchased or acquired Luxx, Hydrponics, HPI, or Route Four and their assets and liabilities, which Scotts placed under a wholly owned subsidiary, Hawthorne, to continue operations as Luxx.

36. Scotts purchased or acquired Luxx, Hydrponics, HPI, or Route Four and created Hawthorne, which manages, owns, or controls these entities, specifically for the purpose of manufacturing, selling, producing, or distributing Luxx lamps, along with other related products, for the purpose of profiting from the cultivation, production, growth, or sale of medical or recreational marijuana or cannabis products throughout the United States, including Oklahoma.

37. Defendants are in the business of manufacturing, selling, producing, or distributing Luxx lamps for the particular purpose of cultivating, producing, growing, and selling of medical or recreational marijuana or cannabis products throughout the United States, including Oklahoma.

38. Defendants distributed, placed into the stream of commerce, and sold the Luxx lamps for the purpose of medical or recreational marijuana cultivation and production.

39. Defendants knew or had reason to know that Golden Shovel was in the business of cultivating, growing, producing, and marketing medical marijuana when they sold and distributed the Luxx lamps to GPM.

40. Under Oklahoma law, the prevailing party in this action is entitled to its incidental costs, including its reasonable attorneys' fees, court costs, and interest, which are taxed and collected as other costs of the action. 12 O.S. §§ 939, 940(A).

## IV.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Strict Products Liability)

41. Plaintiffs reassert, reallege, and incorporate Paragraphs 1 through 40 herein.

42. Defendants designed, manufactured, marketed, distributed, and sold the Luxx lamps to GPM specifically for Golden Shovel to cultivate its medical marijuana products.

43. Defendants designed and manufactured the Luxx lamps in a manner that made them defective and unreasonably dangerous because the lamps exploded forcefully ejecting extremely high heated quartz glass and crystal particles from the lamp fixture igniting any combustibles that the particles came into contact with.

44. Defendants also marketed and distributed the Luxx lamps in a manner that made them defective and unreasonably dangerous because Defendants did not adequately warn of the risks that the Luxx lamps may overheat, explode, and eject extremely high heated quartz glass and crystal particles from the lamp fixture prior to their end of their life within months of initial use.

45. The risks that the Luxx lamps would overheat and explode prior to their end of their life within months of initial use was not one that Golden Shovel, an ordinary user, would expect.

46. The Luxx lamps were defective and unreasonably dangerous at the time they left Defendants' possession and control.

47. Defendants knew or had reason to know that the Luxx lamps marketed, sold, and distributed to GPM were defective, unreasonably dangerous, and unfit for their ordinary purpose for which Golden Shovel intended to use them or that Golden Shovel may reasonably have been expected to use them.

6

48. Plaintiffs sustained damages and losses directly and as a result of the defective Luxx lamps GPM purchased from Defendants.

49. Defendants' unreasonable conduct in manufacturing, distributing, and selling the defective Luxx lamps to GPM and Golden Shovel was intentional, willful, wanton or committed with a reckless disregard for their rights for which they seek punitive damages.

50. Defendants are strictly liable to Plaintiffs for their actual and punitive damages in an amount in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332.

## SECOND CAUSE OF ACTION
(Negligence)

51. Plaintiffs reassert, reallege, and incorporate Paragraphs 1 through 50 herein.

52. Defendants owed Plaintiffs a duty to conduct themselves in a reasonable and prudent manner so as not to damage or injure GPM's property or Golden Shovel's business.

53. Defendants marketed the Luxx lamps as advantageous because of their ability to carefully control the "warmth" or "coolness" of the light emitted by varying the mixture or "dose" of metals and gases inside the arc tube.

54. Defendants negligently failed warn, notify, or disclose the countervailing disadvantage, which was the known propensity of the Luxx lamps to explode resulting in the forceful ejection of extremely high heated quartz glass particles from the fixture igniting any combustibles that the quartz particles come into contact with.

55. In addition, Defendants failed to inspect, test, sample, or, otherwise, alleviate the known risk that the Luxx lamps sold to GPM and utilized by Golden Shovel could explode when Defendants either knew or had reason to know that the Luxx lamps were defective, precisely, because of overheating.

56. GPM's property was damaged when the Luxx lamps exploded causing, among other things, a fire that damaged its property resulting in the loss of its deductible and other uninsured losses.

57. The Luxx lamps destruction of Golden Shovel's crop and inventory caused it to incur, and continues to cause it to incur, business losses and additional operating expenses.

58. Defendants' acts or omissions were the proximate cause of Plaintiffs' damages and losses.

59. Defendants' acts or omissions demonstrate a want of due care that raises the presumption of willful and conscious indifference to the consequences, a reckless indifference or disregard for the health, safety, or rights of others, or a willful violation of law. 23 O.S. § 9.1.

60. Plaintiffs seek actual and punitive damages in an amount in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

## THIRD CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

61. Plaintiffs reassert, reallege, and incorporate Paragraphs 1 through 60 herein.

62. Defendants were sellers and merchants of the Luxx lamps.

63. On or about December 19, 2019, GPM purchased the Luxx lamps from Defendants.

64. An implied warranty that the Luxx lamps were merchantable arose by operation of law as a part of the sale. 12A O.S. §§ 2-314, 2-315.

65. Defendants breached the implied warranty of merchantability in that the Luxx lamps were not in a merchantable condition when Defendants sold them to GPM or anytime Golden Shovel used them thereafter and were not fit for the ordinary purposes for which such goods are used in that the Luxx lamps were defective due to prematurely overheating, exploding, and starting fires.

66. Defendants' Luxx lamps sold to GPM were defective, exploded, and caught fire destroying Golden Shovel's crop and inventory.

67. Plaintiffs notified Defendants of the defects in the Luxx lamps as well as their damages and losses within a reasonable time after discovering Defendants' breach.

68. As a result of Defendants' breach of the implied warranty of merchantability, GPM has suffered damages, including its unreimbursed deductible and other uninsured losses such as the difference between the value of the Luxx lamps as delivered and the value they would have had if they had been as warranted.

69. In addition, Defendants' breach of the implied warranty of merchantability also caused Golden Shovel to incur incidental and consequential damages in the form of destroyed crops, inventory, and related equipment as well as lost profits and additional operating costs.

70. Plaintiffs' damages and losses were proximately and directly caused by the defective Luxx lamps sold by Defendants.

71. To date, Defendants have refused to compensate Plaintiffs for their damages and losses.

72. Plaintiffs seek actual damages in an amount in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

### FOURTH CAUSE OF ACTION
### (Breach of Express Warranty)

73. Plaintiffs reassert, reallege, and incorporate Paragraphs 1 through 72 herein.

74. Defendants were sellers and merchants of the Luxx lamps.

75. On or about December 19, 2019, GPM purchased the Luxx lamps from Defendants.

76. Defendants expressly warranted that they had carefully controlled the "warmth" or "coolness" of the light emitted by the Luxx lamps by affirming, promising, or describing their

method of varying the mixture or "dose" of metals and gases inside the arc tube for such purposes. 12A O.S. §§ 2-313.

77. Defendants further expressly warranted that the Luxx lamps would be fit for Golden Shovel's purpose of cultivating, producing, and growing marijuana plants by affirming, promising, or describing the use of Luxx lamps for such intended uses and purposes. 12A O.S. §§ 2-313.

78. Defendants breached these expressed warranties in that the Luxx lamps were not fit for the described purposes because they were defective due to prematurely overheating, exploding, and starting fires.

79. Defendants' Luxx lamps sold to GPM were defective, exploded, and caught fire destroying Golden Shovel's crop, inventory, and related equipment.

80. Plaintiffs notified Defendants of the defects in the Luxx lamps as well as their damages and losses within a reasonable time after discovering Defendants' breach.

81. As a result of Defendants' breach of their express warranties, GPM has suffered damages, including its unreimbursed deductible and other uninsured losses such as the difference between the value of the Luxx lamps as delivered and the value they would have had if they had been as warranted.

82. In addition, Defendants' breach of their express warranties also caused Golden Shovel to incur incidental and consequential damages in the form of destroyed crops, inventory, and related equipment as well as lost profits and additional operating costs.

83. Plaintiffs' damages and losses were proximately and directly caused by the defective Luxx lamps sold by Defendants.

84. To date, Defendants have refused to compensate Plaintiffs for their damages and losses.

85. Plaintiffs seek actual damages in an amount in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

## FIFTH CAUSE OF ACTION
### (Breach of Implied Warranty of Fitness for Particular Purpose)

86. Plaintiffs reassert, reallege, and incorporate Paragraphs 1 through 85 herein.

87. Defendants were sellers and merchants of the Luxx lamps.

88. Prior to or at the time of purchase, Plaintiffs informed Defendants of Golden Shovel's particular purpose of cultivating, growing, and producing medical marijuana for which GPM required the Luxx lamps, and Plaintiffs requested that Defendants select and furnish suitable goods for such particular purposes.

89. Plaintiffs relied upon Defendants' skill, judgment, and knowledge to select and furnish suitable goods, and Defendants knew or had reason to know that Plaintiffs were so relying.

90. As a result of these circumstances, the sale included an implied warranty that the Luxx lamps were fit for Plaintiffs' particular purposes. 12A O.S. § 2-315.

91. On or about December 19, 2019, GPM purchased the Luxx lamps from Defendants.

92. GPM purchased the Luxx lamps for the particular purpose and benefit of Golden Shovel cultivating, growing, and producing medical marijuana.

93. Defendants breached their implied warranty of fitness for a particular purpose in that the Luxx lamps were not fit for the described purposes because they were defective due to prematurely overheating, exploding, and starting fires.

94. Defendants' Luxx lamps sold to GPM were defective, exploded, and caught fire destroying Golden Shovel's crop, inventory, and related equipment.

95. Plaintiffs notified Defendants of the defects in the Luxx lamps as well as their damages and losses within a reasonable time after discovering Defendants' breach.

96. As a result of Defendants' breach of their implied warranty of fitness for a particular purpose, GPM has suffered damages, including its unreimbursed deductible and other uninsured losses such as the difference between the value of the Luxx lamps as delivered and the value they would have had if they had been as warranted.

97. In addition, Defendants' breach of their implied warranty of fitness for particular purpose also caused Golden Shovel to incur incidental and consequential damages in the form of destroyed crops, inventory, and related equipment as well as lost profits and additional operating costs.

98. Plaintiffs' damages and losses were proximately and directly caused by the defective Luxx lamps sold by Defendants.

99. To date, Defendants have refused to compensate Plaintiffs for their damages and losses.

100. Plaintiffs seek actual damages in an amount in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

## SIXTH CAUSE OF ACTION
**(Violations of the Oklahoma Consumer Protection Act, OKLA. STAT. tit. 15 §§ 750, *et seq.*)**

101. Plaintiffs reassert, reallege, and incorporate Paragraphs 1 through 100 herein.

102. Any misrepresentation, omission, or other practice that has deceived or could reasonably be expected to deceive or mislead a person to their detriment constitutes a deceptive trade practice under Oklahoma law. 15 O.S. § 752(13).

103. Such a practice may occur before, during, or after a consumer transaction is entered into and may be either written or oral. 15 O.S. § 752(13).

104. Any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers constitutes an unfair trade practice under Oklahoma law. 15 O.S. § 752(14).

105. Defendants were sellers and merchants of the Luxx lamps.

106. Defendants marketed the Luxx lamps as advantageous because of their ability to carefully control the "warmth" or "coolness" of the light emitted by the Luxx lamps by varying the mixture or "dose" of metals and gases inside the arc tube.

107. However, Defendants failed to disclose the countervailing disadvantage, which was the known propensity of Luxx lamps to explode, usually at the end of their life, resulting in the forceful ejection of extremely high heated quartz glass or crystal particles from the fixture igniting any combustibles that the quartz or crystal particles come into contact with.

108. On or about December 19, 2019, GPM purchased the Luxx lamps from Defendants.

109. Defendants knew or had reason to know that the Luxx lamps marketed, sold, and distributed to GPM were defective, unreasonably dangerous, and unfit for their ordinary purpose for which Golden Shovel intended to use them or that Golden Shovel may reasonably have been expected to use them.

110. Defendants failed to disclose or warn of the risks that the Luxx lamps would overheat, explode, and eject extremely high heated quartz glass and crystal particles from the lamp fixture prior to their end of their life within months of initial use, which was not a risk that Golden Shovel, an ordinary consumer, would expect.

111. Defendants committed unfair or deceptive trade practices by marketing, selling, and distributing the Luxx lamps to GPM when the Luxx lamps were unfit to be sold and were sold

without full disclosure of the risks or any warning of the danger the Luxx lamps posed to GPM's facility and Golden Shovel's intended and known use in cultivating or growing medical marijuana.

112. Plaintiffs sustained damages and losses directly and as a result of the defective Luxx lamps GPM purchased from Defendants.

113. As a result of Defendant's deceptive trade practices, GPM and Golden Shovel are entitled to their actual damages, attorneys' fees, costs, and a civil penalty for each and every instance of Defendants' deceptive trade practices. 15 O.S. § 761.1.

## V.
## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Golden Shovel Holdings, LLC and Golden Property Management, LLC respectfully request that this Court enter judgment against Defendants The Scotts Miracle-Gro Company, The Hawthorne Collective, Inc. *d/b/a* Luxx Lighting, Route Four, LLC *d/b/a* Hydroponics, Inc., Luxx Lighting, Inc., and Hydroponics, Inc., and HPI Distribution Corporation in excess of the amount required for diversity jurisdiction, 28 U.S.C. § 1332, and award them actual and punitive damages and all costs incurred in this action, including reasonable attorneys' fees, court costs, and prejudgment and prost-judgment interest, and any and all other legal or equitable relief to which they may be entitled considering the premises.

**DATED** May 24, 2022.

GOOLSBY, PROCTOR, HEEFNER & GIBBS, P.C.

_____
R. Todd Goolsby (OBA #12676)
David D. Proctor (OBA #13863)
Seth D. Coldiron (OBA #20041)
D. Bryan Goodpasture (OBA #33894)
701 N. Broadway Avenue, Suite 400
Oklahoma City, OK 73102
Telephone: (405) 524-2400
Facsimile: (405) 525-6004

Email: tgoolsby@gphgw.com
       dproctor@gphglaw.om
       scoldiron@gphglaw.com
       bgoodpasture@gphglaw.com

*Attorneys for Plaintiffs,
Golden Shovel Holdings, LLC
& Golden Prop. Mgmt., LLC*

**JURY TRIAL DEMANDED**
**ATTORENY LIEN CLAIMED**